In the Matter of GENE CRESCENZI, a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 21, 1988

## APPEARANCES OF COUNSEL

*Hal R. Lieberman* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*A. Lawrence Washburn, Jr.,* for respondent.

## OPINION OF THE COURT

Per Curiam.

The Departmental Disciplinary Committee has moved for an order disbarring respondent for his willful and unlawful failure to comply with this court's order, entered October 5, 1982 (90 AD2d 453), suspending him from practice, upon the grounds that he is suffering from mental and physical disabilities which make it impossible for him to reply to petitioner's investigation of various complaints lodged against him. The DDC also seeks to hold respondent in criminal contempt for violation of the October 5, 1982 order, as, well as a March 14, 1985 order (109 AD2d 655) enjoining him from the use of a letterhead identifying himself (without limitation) as an attorney, and for his refusal to cooperate with the DDC's attempts to inventory his files pursuant to an order of this court entered January 14, 1986 (116 AD2d 496). The DDC further seeks to hold respondent in civil contempt, pursuant to Judiciary Law § 753 (A) (4), for holding himself out as an attorney and officer of the court, and acting as such without authority and in willful violation of our order of October 5, 1982 suspending him from practice. The DDC also seeks to impose the costs of this motion upon respondent since it was occasioned by his willful and contemptuous violation of several orders of this court.

Respondent was admitted to practice in the First Department on January 5, 1955.

On October 5, 1982, this court denied as moot a motion to

suspend respondent from practice for failure to cooperate with an investigation into complaints against him, but suspended him from practice pursuant to 22 NYCRR 603.16 (b) (1) on the ground that he was suffering from mental and physical disabilities which made it impossible to respond to the complaints.

A subsequent motion to disbar respondent was granted on January 14, 1986, only to the extent of appointing the DDC to inventory his files and take appropriate steps to protect his clients. The request to disbar was otherwise denied with leave to renew upon a showing that respondent was no longer incapacitated from practicing law by virtue of mental infirmity.

Respondent has never complied with any of this court's orders. He did not file an affidavit of compliance with the initial order of suspension nor send notices to his clients informing them that he had been suspended. Additionally, subsequent to the entry of the January 14, 1986 order directing him to make his files available for inventory but denying with leave to renew the motion to disbar, he has not only refused to permit petitioner access to his files, but has continued to practice law.

On April 14, 1986, he filed an answer on behalf of a tenant in an eviction proceeding (*Keith Plaza Assocs. v Felidi),* and, on April 21, 1986, a demand for a bill of particulars. On both pleadings he identified himself, without limitation, as "Attorney for Tenant". The landlord's attorney notified the District Attorney of respondent's appearance, and respondent wrote a letter on his legal stationery to the District Attorney describing the order of suspension as illegal and defective, and proclaiming his competence to continue practicing law.

In *Deiana v American Express Co.* he filed papers as the attorney for plaintiffs as recently as June 29, 1987. The Judge presiding, Justice Ciparick, indicated her awareness of respondent's suspension, but he has refused to withdraw. Respondent has represented his sister, Anna Onoroto, in a dispute with her neighbors since 1978 and, on November 4, 1985, three years after the order of suspension, sent correspondence on his legal stationery to the opposing parties and their attorneys.

In May 1987, in *YMCA v Plotkin,* he represented a tenant who is the subject of a nonpayment proceeding. When Judge Carol Huff and subsequently the supervising Judge, Acting Supreme Court Justice Silberman, advised him that he would not be permitted to practice in the Housing Court, he pro-

tested the order and insisted that the decision be placed on the record.

While this petition was pending the DDC supplied a letter from an attorney, who stated that on November 19, 1987 he met respondent on the steps of the Queens County Courthouse, and respondent said that he was on his way into the courthouse in a matter relating to the Mental Hygiene Law. When the attorney stated that he thought respondent had been suspended, respondent replied that the suspension was illegal and that he was involved in litigation concerning his suspension. While the evidentiary value of such a letter may be questioned, we note that respondent has consistently refused to avail himself of any opportunity to be heard personally by the DDC, and that the actions reported in the letter are consistent with a host of complaints lodged against respondent over the last several years.

Additionally, respondent has himself listed in the Manhattan "White" and "Yellow" pages as a lawyer, and a professional sign remains on a building at 2439 Southern Boulevard, where respondent holds himself out as an attorney-at-law.

Respondent has refused to supply to the DDC his list of clients despite written requests and numerous calls to him and his counsel.

It is clear that respondent remains in violation of all our orders, most dramatically the order of suspension. Furthermore, respondent is clearly aware of our orders, and has been represented by counsel at various stages of the proceedings against him. He requested and received a further extension of his time to answer this motion so that new counsel might be able to answer the papers. The November 6th letter sent by respondent to this court requesting such extension is on his legal stationery, and has asterisked at the bottom "in good standing in U.S. District Court for Southern and Eastern Districts". Nothing on the letterhead indicates that he is suspended from practice in New York. It should be noted that respondent attempted to have these disciplinary proceedings removed to the Federal court, but his request was denied on October 28 by Judge Edelstein.

In essence, respondent's answer, submitted by the same attorney who has represented him at previous stages of these proceedings, is that the request to hold him in contempt was defective since the notice of motion did not contain the warning language, in bold type, that appears in section 756 of the

Judiciary Law, advising respondent that a motion will be made to hold him in contempt. In reply, the DDC, although noting that the section applies only in the case of criminal contempt, re-served respondent with an amended notice of motion containing the bold type warning. Respondent answered by, *inter alia,* asserting his Fifth Amendment privilege against self-incrimination.

Respondent also argues that the petition has not established that he is no longer incapacitated by mental infirmity from practicing law, and, thus, he cannot be disbarred.

Respondent is under suspension because the court, having found that he was mentally unfit to respond to the charges against him, believed that fairness dictated he not be disbarred by virtue of contumacious conduct for which he might not be responsible. Respondent has taken that exercise of the court's indulgence, and used it to frustrate our injunction against his engaging in the practice of law. He has continued to practice openly and notoriously, ignored subsequent orders, retained counsel and, *pro se,* instituted proceedings in the Federal court intended to circumvent our orders. He has never denied knowledge of the 1982 order of suspension or otherwise claimed ignorance with respect to his legal situation. Yet, he brazenly continues in all respects to hold himself out as an attorney and member of the Bar. Although we suspended respondent five years ago because of mental infirmity, his subsequent conduct shows that he is fully capable of attracting and retaining clients and holding himself out as qualified to practice law. The argument that he cannot be disbarred because he is mentally unfit to practice is disingenuous, in light of his violation of the order of suspension, and his previous resistance to the DDC's investigation of serious charges relating to his conduct as an attorney. We cannot permit him to contort the decision to suspend him and to snub the court further and place the public in greater jeopardy.

Thus, because of his disobedience of the order of suspension, as well as subsequent orders, we find sufficient exists in the papers before us to establish respondent's egregious and continuing misconduct, and to support the sanction of disbarment. The repeated and deliberate violations of our orders cannot be condoned. Although apparently afflicted by some mental disorder, respondent is still able to function as a lawyer. His mental capacity has been sufficient to allow him to locate various New York State agencies and courthouses, repeatedly file papers therein and purport to represent clients

in legal proceedings before those agencies and courts; he openly considers this court's orders "illegal" or "defective"; and he vehemently denies any illness or mental infirmity, as a letter he sent to New York County District Attorney Robert Morgenthau attests. Respondent should not be permitted to take advantage of a rule designed to protect incapacitated attorneys from their own physical and mental shortcomings by continuing to practice. Respondent's conduct is in direct violation of a lawful order of this court suspending him effective October 5, 1982 and constitutes grounds for disbarment pursuant to a well-established line of cases in this Department. *(See, e.g., Matter of Staller,* 104 AD2d 116; *Matter of Becker,* 95 AD2d 67; *Matter of Teplin,* 82 AD2d 296; *Matter of Nitsberg,* 79 AD2d 489.) In *Nitsberg,* a case almost squarely in point, the respondent was suspended due to mental disability during the pendency of disciplinary proceedings. He was thereafter disbarred when he continued to practice, notwithstanding his claim of a recurrence of the original disability.

Pursuant to Judiciary Law § 750 (A) (3) and (B), an individual may be punished for criminal contempt because of his willful disobedience of a court's mandate. Likewise, under Judiciary Law § 753 (A) (4) he may be found guilty of civil contempt for acting as an attorney without authority. Clearly, respondent's conduct has brought him within the purview of these two statutes also.

Accordingly, the petition is granted to the extent of disbarring respondent and striking his name from the roll of attorneys and counselors-at-law; finding respondent to be guilty of both civil and criminal contempt, referring the contempt charges to a Referee for the imposition of sanctions, and assessing costs of these motions upon respondent.

KUPFERMAN, J. P., SULLIVAN, ROSS, ASCH and MILONAS, JJ., concur.

Respondent's name is stricken from the roll of attorneys and counselors-at-law in the State of New York forthwith.